UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER LINDSAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-1137 (TSC) |
| | ) |
| ROBERT WILKIE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Roger Lindsay brings this case against his employer, the Department of Veterans Affairs (the VA), VA Secretary Robert Wilkie, and three employees at the Veterans Administration Medical Center (VA Medical Center)—Elton Artis, Robyn Hardy, and Stanley Staton. Plaintiff alleges that Artis, Hardy, and Staton, in their individual capacities, reassigned his work responsibilities, excluded him from certain office operations, and retaliated against him for filing a complaint with the agency's whistleblower office in violation of the First Amendment (Count I) and Due Process Clause of the Fifth Amendment (Count II). (ECF No. 1, Compl. ¶¶ 22–28.) He seeks money damages for these violations under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). (*Id.* ¶ 1.) Plaintiff also claims Wilkie, acting in his official capacity, violated the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. (Count III). (*Id.* ¶ 31–35.)

Defendants move to dismiss all counts for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 12.) Alternatively, as to Count III, Defendants seek summary judgment pursuant to Rule 56. For the reasons set forth below, the motion to dismiss will be GRANTED as to all counts.

1

## I.  BACKGROUND

The facts set forth in the Complaint leave many open questions which make it difficult to determine whether the Plaintiff has presented viable causes of action.  Plaintiff's response to Defendants' motion to dismiss fails to provide further clarification.  The facts below are pieced together from the Complaint.[1]

Plaintiff Roger Lindsay is the Deputy Chief of Police at the VA Medical Center in the District of Columbia, a position he has held since December 2017.  (Compl. ¶¶ 3, 5.)  His duties include overseeing security, training, administration, and operations (which includes the supervision of officers).  (*Id.* ¶ 6.)  Plaintiff does not provide more specific information about his job duties.

In May of 2018, Troy Brown became the Acting Chief of Police.  (*Id.* ¶ 6.)  Two months later, Brown temporarily promoted investigator Elton Artis to serve as the Acting Deputy Chief of Police—the same title held by Plaintiff.  (*Id.*)  Plaintiff alleges that Brown created that position, which previously "did not exist."  (*Id.*)  Approximately one month later, Plaintiff "requested that Artis be removed from the position" because Artis was "performing [Plaintiff's] duties and causing a disruption in the chain of command."  (*Id.*)  Plaintiff does not specify to whom he made this request but claims his "request was not addressed."  (*Id.*)  Nor is it clear from the Complaint what specific job duties were reassigned from Plaintiff to Artis.

Three months later, on October 31, 2018, Plaintiff took annual leave for one week to qualify for his service weapon license.  (*Id.* ¶ 8.)  It is unclear whether this was a requirement of his job, why he needed to take annual leave to do so, whether he was directed to do so by

---

[1] The facts in this section are drawn from the allegations in the Complaint and interpreted in the light most favorable to the Plaintiff.  Unless otherwise noted, they are not in dispute.

superior officers, or whether he needed an entire week to do so. That same day, Assistant Medical Center Director Stanley Staton posted a job opening for the "Acting Chief of Police Service" position, which closed on November 7, 2018. (*Id.*) Plaintiff learned that he was ineligible to apply for the position until he requalified for his service weapon. (*Id.*) An unidentified person told Plaintiff that requalification for his service weapon would take place on November 7 at 11:00 a.m., but the date was moved to November 14. (*Id.*) Plaintiff was informed of the date change by one of Artis' direct reports. (*Id.*) Plaintiff believes that the date "was changed to prevent him from applying for the position because he was the most qualified applicant." (*Id.*)

Artis was ultimately selected as Acting Chief of Police and Plaintiff filed a "congressional complaint" with Maryland's United States Senators, and a complaint with the Veterans Administration Whistleblower's Office. (*Id.* ¶ 10.) He complained of "widespread mismanagement and violations of OPM ([Office of Personnel Management)] guidelines" including reassigning his duties to Artis, creating the Acting Deputy Police Chief position, and only posting the Acting Chief of Police position for five days so as to exclude Plaintiff from consideration. (*Id.*) The Complaint does not detail the alleged widespread mismanagement, OPM guideline violations, or which specific duties were reassigned from Plaintiff to Artis. Shortly after Plaintiff filed the congressional complaint, Staton called Plaintiff into a meeting and "angrily confronted him." (*Id.*)

After Artis' term expired in January 2019, Robyn Hardy became the Chief of Police. (*Id.* ¶ 11.) Though Plaintiff does not provide a source for this information, he claims Hardy met with Artis and Human Resources to "discuss options for removing Deputy Chief Plaintiff from his position." (*Id.*) Hardy also "refused to meet with [Plaintiff] or include him in any of the

operations of Police Service." (*Id.*) According to Plaintiff, Hardy also reassigned Plaintiff's employment duties to Artis. For instance, Plaintiff states he is "responsible for the supervision and discipline of officers," but he was not a part of the decision to terminate an employee who assaulted a female visitor at the VA Medical Center. (*Id.* ¶¶ 11, 13.) Plaintiff does not explain which of his other duties were reassigned or whether he was stripped of all supervisory authority, however.

In March, Plaintiff submitted a written request for FMLA leave for back surgery, to begin on March 21. (Compl. ¶ 17.) The day before he was scheduled to begin his leave, he received an email from a VA privacy officer "advising him that the Privacy Office has received a report that he violated the Agency's Privacy Act by releasing personal identifiable information . . . in reference to a personal statement that Plaintiff Lindsay provided to [a terminated employee] for the MPD investigation in reference to his treatment at the VA Medical Center." (*Id.*) Though Plaintiff only had approximately fifteen minutes left on his shift before he was scheduled to take leave, the notice ordered him to respond within seventy-two hours. (*Id.*) He does not indicate whether he responded to the letter or what became of the alleged violation.

Although Plaintiff alleges that the VA never approved his request for leave, it is undisputed that he took his FMLA leave. (*Id.* ¶ 18.) He alleges that immediately after he began his leave, Hardy "removed" Plaintiff from his position as the Deputy Chief of Police. He also states that Artis moved into Plaintiff's office, removed Plaintiff's name from the door, and removed Plaintiff's name from various databases in the Police Service. (*Id.*) Plaintiff further alleges that while he was on medical leave, an unnamed representative from the VA Medical Center called and advised him that when he returned to work, he might be placed in a position other than the Deputy Chief of Police. (*Id.* ¶ 19.)

Plaintiff brings two constitutional claims against Artis, Hardy, and Staton in their individual capacities, alleging retaliation under the First Amendment (Count I) and due process violations under the Fifth Amendment (Count II). While Count I is labeled as a *Bivens* claim, (Compl. at 9), Count II contains no reference to *Bivens* or to monetary relief—it appears to be a free-standing Fifth Amendment claim, (*id.* ¶¶ 25–29). Plaintiff also argues that Defendants failed to approve his medical leave and retaliated against him by falsely charging him with a Privacy Act violation and removing him from his position as Deputy Chief of Police in violation of the FMLA (Count III).

Plaintiff seeks: 1) a declaratory judgment that the individual Defendants' conduct violated his rights under the First and Fifth Amendments and the FMLA; 2) a permanent injunction prohibiting Defendants Hardy, Artis, and Staton from repeating charges that Plaintiff violated the Privacy Act; 3) compensatory and punitive damages; and 4) attorney's fees and other litigation costs. (*Id.* at 13–14.)

Defendants have moved to dismiss the complaint for failure to state a claim. Interpreting Counts I and II as *Bivens* claims, Defendants argue that the Supreme Court has never recognized a non-statutory remedy under the First Amendment against federal officials nor has it recognized an implied damages remedy for a Fifth Amendment due process claim arising out of federal employment where employment actions are covered by the Civil Service Reform Act. Defendants also contend that Plaintiff has failed to establish that he suffered a materially adverse employment action and thus his FMLA claim should be dismissed pursuant to Rule 12(b)(6).[2]

---

[2] Defendants have moved, in the alternative, for summary judgment. Having concluded that Defendants are entitled to dismissal pursuant to Rule 12(b)(6) on all counts of the Complaint, the court need not consider whether summary judgment is warranted.

## II.   ANALYSIS

### A.  Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it alleges sufficient facts to permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979), *aff'd on reh'g*, 628 F.2d 199 (D.C. Cir. 1980) (internal quotations omitted) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."). The court can only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### B.  First Amendment

In Count I, which is labeled as a *Bivens* claim, Plaintiff seeks money damages against government officials who, acting in their official capacities, violated his First Amendment rights. (*See* Compl. ¶ 24.) In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, "the Supreme Court held that the Fourth Amendment creates an implied damages action for

unconstitutional searches against line officers enforcing federal drug laws." *Loumiet v. United States*, 948 F.3d 376, 377–78 (D.C. Cir. 2020) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 392–93 (1999)).  Since then, the Supreme Court has interpreted *Bivens* to provide "a vehicle for suing federal officials in their individual capacities for money damages for a very small group of constitutional violations."  5C Charles Alan Wright, et al., *Federal Practice and Procedure* § 8388 (3d ed. 2012).

In the decade after *Bivens*, however, the Supreme Court applied the case in only two new contexts—"one under the Fifth Amendment against members of Congress for employment discrimination on the basis of sex and one under the Eighth Amendment against federal prison officials for failure to provide adequate medical care."  *Loumiet*, 948 F.3d at 380 (citing *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); *Carlson v. Green*, 446 U.S. 14, 19 (1980)).  Thus, "the Supreme Court has carefully circumscribed *Bivens* and 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"  *Id.* (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)).

When presented with a *Bivens* claim, a court "must consider whether the plaintiff seeks to extend *Bivens* into a new context."  *Loumiet*, 948 F.3d at 381 (citing *Abbasi*, 137 S. Ct. at 1857–60) (internal quotation marks omitted).  If so, the court should then consider "whether there are any special factors counselling hesitation," *id.*, given the Supreme Court's admonition that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity," *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).

"The new-context inquiry . . . is straightforward."  *Loumiet*, 948 F.3d at 381.  The court asks whether "[a] case is different in a meaningful way from previous *Bivens* cases decided." *Abbasi*, 137 S. Ct. at 1859.  Here, Plaintiff claims the VA retaliated against him by violating his

7

First Amendment right to freedom of speech and to petition the government to redress his grievances. The Supreme Court has never applied *Bivens* to a First Amendment retaliation claim. Thus, Plaintiff's claim presents a new context for a *Bivens* analysis.

Next, the court considers whether there are any special factors counseling hesitation in expanding *Bivens*. One such factor is whether an "alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The Supreme Court has held that when there are "comprehensive procedural and substantive provisions giving meaningful remedies against the United States," a *Bivens* remedy is not appropriate. *See Bush v. Lucas*, 462 U.S. 367, 368 (1983).

Here, the Civil Service Reform Act, "a comprehensive system for reviewing personnel action[s] taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988), provides an alternate provision under which Plaintiff could seek redress. Plaintiff has already submitted a complaint to the VA's Office of Accountability and Whistleblower Protection alleging "prohibited personnel practice." (Compl. ¶ 10.) He has not, however, filed an action with the Office of Special Counsel, who can "receive and investigate allegations of prohibited personnel practices" pursuant to the Civil Service Reform Act. 5 U.S.C. § 1212. Because Plaintiff has already taken advantage of one process and may avail himself of an alternative process (which he has not yet even attempted to utilize) that would address his complaints, "it would be inappropriate for this Court to supplement that regulatory scheme with a new

8

First Amendment right to freedom of speech and to petition the government to redress his grievances. The Supreme Court has never applied *Bivens* to a First Amendment retaliation claim. Thus, Plaintiff's claim presents a new context for a *Bivens* analysis.

Next, the court considers whether there are any special factors counseling hesitation in expanding *Bivens*. One such factor is whether an "alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The Supreme Court has held that when there are "comprehensive procedural and substantive provisions giving meaningful remedies against the United States," a *Bivens* remedy is not appropriate. *See Bush v. Lucas*, 462 U.S. 367, 368 (1983).

Here, the Civil Service Reform Act, "a comprehensive system for reviewing personnel action[s] taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988), provides an alternate provision under which Plaintiff could seek redress. Plaintiff has already submitted a complaint to the VA's Office of Accountability and Whistleblower Protection alleging "prohibited personnel practice." (Compl. ¶ 10.) He has not, however, filed an action with the Office of Special Counsel, who can "receive and investigate allegations of prohibited personnel practices" pursuant to the Civil Service Reform Act. 5 U.S.C. § 1212. Because Plaintiff has already taken advantage of one process and may avail himself of an alternative process (which he has not yet even attempted to utilize) that would address his complaints, "it would be inappropriate for this Court to supplement that regulatory scheme with a new

nonstatutory damages remedy." *Bush*, 462 U.S. at 367. Thus, the court declines Plaintiff's invitation to expand *Bivens* into a new context.[3]

Plaintiff argues in his opposition brief that Defendants have mischaracterized his claims and that he may still seek "equitable relief" under *Bivens*. (ECF No. 15, Pl. Opp'n at 16.) The court is not persuaded. Equitable relief is not available to a plaintiff in a *Bivens* action. *See Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223, 1225 (D.C. Cir. 1994) ("[S]ince the [plaintiffs] continued to seek only damages and not any equitable relief, their federal claims thus rested on *Bivens*"). *Bivens* claims involve "suing federal officials in their individual capacities for *money damages*," not equitable relief. 5C Charles Alan Wright, et al., *Federal Practice and Procedure* § 8388 (3d ed. 2012) (emphasis supplied).

Furthermore, Plaintiff's request for equitable relief presents a new theory that does not appear in the Complaint. *See Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 83 n.2 (D.D.C. 2014) ("An opposition brief cannot be used to put forth new allegations and legal theories, and as such, the Court must ignore those facts for the purposes of deciding [the plaintiff's] motion").

Even assuming Plaintiff's Complaint can be construed to plead a free-standing First Amendment retaliation claim for equitable relief, his allegations fall short of stating a valid claim. To bring a First Amendment retaliation claim, a plaintiff must show that: (1) "he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken

---

[3] Defendants Hardy, Artis, and Staton also claim that they are entitled to qualified immunity. The court need not decide this issue because it has already found that Plaintiff has not pleaded a *Bivens* claim which entitles him to relief. *See Loumiet*, 948 F.3d at 380.

9

against him." *Aref v. Lynch*, 833 F.3d 242, 259 (D.C. Cir. 2016); *see also Pinson v. U.S. Dep't of Just.*, 246 F. Supp. 3d 211 (D.D.C. 2017) (applying same standard to a *Bivens* claim for First Amendment retaliation).

The allegations in the Complaint fail to demonstrate that Plaintiff engaged in protected speech. Plaintiff appears to assume that a congressional complaint, a complaint filed with the VA whistleblower's office, and a letter to the D.C. Metropolitan Police Department in support of a terminated employee under investigation constitute protected speech. Circuit precedent says otherwise. Speech "relating to [a] matter of political, social, or other concern to the community" is protected, while speech about "individual personnel disputes and grievances . . . [that is] of no relevance to the public's evaluation of the performance of governmental agencies" is not. *LeFande v. District of Columbia*, 613 F.3d 1155, 1159, 1161 (D.C. Cir. 2010).

Plaintiff has not asserted facts establishing that his complaints about his employment and medical leave related to a matter of public concern as opposed to a personnel dispute. *See, e.g.*, *Connick v. Myers*, 461 U.S. 138, 148 (1983) (finding that the "confidence and trust" the district attorney's staff members had in their supervisors was not of public concern, nor was "the level of office morale," nor "the need for a grievance committee"); *Barnes v. Small*, 840 F.2d 972, 982 (D.C. Cir. 1988) (finding that alleged assaults and false statements made with the Army's Military Traffic Management Command were not of public concern because the allegations "addressed only the misbehavior of other employees . . . not matters relating to any broader public interest"); *Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984) (explaining that an FBI practice of furloughing agents by lottery merely amounted to "the quintessential employee beef:

10

management has acted incompetently," and was therefore not protected speech).[4]  And while the D.C. Circuit has found that "procedural irregularities that [] affect an integral component of police service" may be relevant to the public's evaluation of its police department, *LeFande*, 613 F.3d at 1161, Plaintiff has not shown that the reassignment of supervisory duties at the VA police department rises to a public concern.

Based on the allegations in the Complaint, Plaintiff has not presented an actionable First Amendment retaliation claim.

### C. Fifth Amendment Due Process Claim

In Count II, Plaintiff alleges that Defendants violated his Fifth Amendment due process rights by "creating an Acting Deputy Chief of Police position . . . and removing Plaintiff's duties as the Deputy Chief of Police and giving his duties to Defendant Artis." (*Id.* ¶ 27.)[5]

"The Fifth Amendment Due Process Clause protects individuals from deprivations of 'life, liberty, or property, without due process of law.'" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (citing U.S. Const. amend. V).  A procedural due process violation—the type alleged here—"occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Id.*  Thus, to establish a viable due process violation, a plaintiff must first identify a valid constitutional interest.

---

[4] In contrast, the Supreme Court has found that speech that implicates a public concern includes the allocation of funds between education and athletic programs, *Pickering v. Bd. of Ed.*, 391 U.S. 563, 569 (1968); a school district's allegedly racially discriminatory policies, *Givhan v. W. Line Consolidated Sch. Dist.*, 439 U.S. 410 (1979); whether a college should be elevated to four-year status, *Perry v. Sindermann*, 408 U.S. 593 (1972); and whether a public school should adopt a dress code for teachers, *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977).

[5] Defendants treat Count II as another *Bivens* claim, but the court reads it as a free-standing due process claim.

Plaintiff argues that he was deprived of his right to continued federal employment by virtue of an "adverse employment action" and consequently suffered "reputational harm/defamation." (Compl. ¶ 26.)[6] The problem for Plaintiff is that he was not subject to an adverse employment action that gives rise to a *constitutional* claim. Based on his own allegations, "Defendant[s] violated [his] Fifth Amendment rights by . . . removing Plaintiff's duties as the Deputy Chief of Police and giving his duties to Defendant Artis." (Compl. ¶ 27.) However, there is "no protected property interest [] implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary." *Anglemyer v. Hamilty Cnty. Hosp.*, 58 F.3d 533, 539 (10th Cir. 1995); *see also McDonald v. Salazar*, 831 F. Supp. 2d 313, 321 (D.D.C. 2011) (finding that "a mere change in duties" did not deprive a plaintiff of his constitutional right to his job); *Humberson*, 236 F. Supp. 2d at 31 (refusing to recognize as a deprivation of a property interest a reassignment that precluded plaintiff from performing certain tasks that he previously performed).

Relying on the Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, Plaintiff argues that the Fifth Amendment protects him from having his responsibilities and supervisory duties removed without due process. (Pl. Opp'n at 19 (citing 470 U.S. 532).) *Loudermill* did not so hold, however. In that case, the Supreme Court found that a *terminated* employee was entitled to a limited administrative hearing before his termination. 470 U.S. at 542 (requiring that the government provide "some kind of a hearing" prior to the discharge of an

---

[6] Defendants assert, and Plaintiff does not dispute, that Plaintiff is covered by the Civil Service Reform Act. "The existence of these protections has led courts to conclude that Competitive Service employees possess a legitimate expectancy of, and therefore a property interest in, continued federal employment." *Humberson v. U.S. Att'y's Office for Dist. of Columbia*, 236 F. Supp. 2d 28, 31 (D.D.C. 2003), *aff'd*, No. 03-5073, 2003 WL 21768064 (D.C. Cir. July 16, 2003) (citing *Buchholz v. Aldaya*, 210 F.3d 862, 867 (8th Cir. 2000); *Stone v. FDIC*, 179 F.3d 1368, 1375 (Fed. Cir. 1999)).

employee who has a constitutionally protected property interest in his employment.) Since Plaintiff was not terminated from his position at the VA, *Loudermill* provides little support for his due process claim.

Accordingly, Count II of the Complaint will be dismissed.

### D. FMLA Claim

Plaintiff also alleges that the VA violated his rights under the FMLA,[7] which entitles eligible employees to twelve weeks of unpaid leave during any twelve-month period if a "serious health condition" prevents the employee from performing the functions of his position. 29 U.S.C. § 2612(a)(1)(D). There are two distinct claims under the FMLA: "(1) interference, if the employer restrained, denied, or interfered with the employee's FMLA rights, and (2) retaliation, if the employer took adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act." *Vick v. Brennan*, 172 F. Supp. 3d 285, 303 (D.D.C. 2016). Plaintiff alleges both. (Compl. ¶¶ 34.)

The court finds that Plaintiff has failed to proffer facts sufficient to support his FMLA claims. Therefore, both claims will be dismissed pursuant to Rule 12(b)(6).

1. Interference

To prevail on an FMLA interference claim, a plaintiff must show that his employer "interfered with, restrain[ed], or denied the exercise of or the attempt to exercise any right provided by the FMLA and that []he was prejudiced thereby." *Gordon v. U.S. Capitol Police*,

---

[7] The court agrees with Defendants that the FMLA claims may only proceed against the VA, which is represented by its Secretary, Wilkie. *See* 29 U.S.C. § 2611(4)(A)(i) (defining an employer as a "person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees"). Thus, to the extent Plaintiff seeks to bring an FMLA claim against Artis, Hardy, and Staton, those claims fail.

13

778 F.3d 158, 164 (D.C. Cir. 2015). Plaintiff alleges that the VA interfered with his rights under FMLA by failing to approve his leave. (Compl. ¶ 34.) But Plaintiff also appears to acknowledge in his Complaint that he took his leave and that the leave was approved. (S*ee id.* ¶ 18–19) (noting that the someone from the VA Medical Center called him while he was on leave and discussed his return).

Modifying his argument in his opposition brief, Plaintiff now claims that Defendants interfered with his FMLA leave by filing a false Privacy Act violation against him and ordering him to respond to it within seventy-two hours, while he was on leave. (Pl. Opp'n. at 11.) Such actions, in his view, effectively discouraged him from taking his leave, and thus constitute interference in violation of the FMLA. (*Id.*)

Even if this conduct amounted to an interference, Plaintiff "fails to identify evidence of prejudice arising by reason of the violation or as a direct result of the violation." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1377 (D.C. Cir. 2020) (internal quotation marks omitted). A finding of prejudice is crucial to Plaintiff's claim because "[r]emedies for FMLA interference claims are 'tailored to the harm suffered.'" *Id.* While Plaintiff claims that "Artis and Hardy [] triggered the false Privacy Act violation investigation against Plaintiff to justify his removal from his position," (Pl. Opp'n at 13), he was never terminated from his position. Nor was he demoted, suspended, or disciplined. (*Id.* at 15.) And he fails to allege any other type of harm. *See, e.g.*, *Gordon*, 778 F.3d at 166 (finding that allegations of monetary losses and harms to future career prospects sufficiently demonstrated prejudice to survive a motion to dismiss of an FMLA interference claim). Because Plaintiff has not sufficiently alleged prejudice resulting from the Privacy Act accusation, he cannot establish interference in violation of FMLA.

2. Retaliation

The prima facie elements of an FMLA retaliation claim are that the employee "(1) engaged in a protected activity for purposes of the statute; (2) suffered an adverse employment action, and (3) that the protected activity and the adverse employment action were causally connected." *Gordon*, 778 F.3d at 161. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). The action must affect "the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). A "tangible employment action in most cases inflicts direct economic harm." *Douglas*, 559 F.3d at 552 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)). The court cannot identify a plausible FMLA retaliation claim based on the scarce factual allegations in the Complaint.

First, Plaintiff claims that Hardy and Artis accusing him of a Privacy Act violation and requiring him to respond as he was about to take medical leave constitutes an adverse employment action. The accusation of a Privacy Act violation alone, so far as the court can tell based on the allegations in the Complaint, did not result in a change in Plaintiff's employment status or economic injury. And though "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006), it is not clear from the Complaint what harm Plaintiff suffered by being required to respond to the

15

violation in seventy-two hours. Without more context, the court is unable to determine what type of response was required, how long it would have taken, or what the penalty was for failing to respond. Accordingly, Plaintiff has failed to identify a materially adverse employment action to support a plausible retaliation claim based on the Privacy Act investigation.

Second, Plaintiff claims "Defendant Hardy removed Plaintiff Lindsay from his position as the Deputy Chief of Police. Defendant Artis, with the knowledge and consent of Defendant Hardy and Defendant Staton, moved into [Plaintiff]'s office and removed [his] name from the door, and removed Plaintiff from various databases in the Police Service." (Compl. ¶ 34.) Given the alleged facts, it is unclear whether these acts qualify as an adverse employment action, particularly where none of the supposed "removals" affected the terms and conditions of Plaintiff's employment. *See Powell*, 306 F.3d at 1131 (holding that "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment" such as pay, benefits, or substantive responsibilities).

In his opposition brief, Plaintiff attempts to clarify his argument and alleges that "Defendants removed Plaintiff from his position with supervisory duties." (*See* Pl. Opp'n at 14.) To be sure, "withdrawing an employee's supervisory duties . . . constitutes an adverse employment action." *Czekalski v. Peters*, 475 F.3d 360, 362 (D.C. Cir. 2007).[8] But the Complaint indicates that Defendants had already reassigned Plaintiff's supervisory duties before he requested FMLA leave. (Compl. ¶ 23) (alleging that Defendant Hardy reassigned all of

---

[8] *Czekalski* arose in the context of a Title VII retaliation claim. However, its analysis is persuasive because the D.C. Circuit has recognized an "overwhelming consensus" among the federal Circuits that an FMLA retaliation claim is governed by the standard applicable to claims brought under the retaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3. *Gordon*, 778 F.3d at 162.

Plaintiff's duties as the Deputy Chief of Police in January 2019); (*id.* ¶ 34) (explaining that Plaintiff submitted his FMLA leave request in February 2019). Thus, Plaintiff has failed to adequately plead a causal connection between the reassignment of his supervisory duties and his request for FMLA leave.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED. The court has already issued an accompanying order.

Date:  December 1, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge